STATE of Missouri,
Plaintiff/Respondent,

v.

Russell CLARK, Jr.,
Defendant/Appellant.

Russell CLARK, Jr., Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60035, 62803.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 29, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1993.

Application to Transfer Denied Sept. 28, 1993.

Scott Everett Walter, Zwibelman, Edelman & Walter, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury found Russell Clark, Jr. guilty of two counts of murder in the first degree in violation of § 559.010 RSMo 1969. The trial court found Clark to be a prior offender and sentenced him to two consecutive terms of life imprisonment. Clark filed a Rule 29.15 motion for post-conviction relief which the motion court denied without an evidentiary hearing. Clark appeals both the judgment of the trial court and the order of the motion court.

In his direct appeal Clark asserts that the trial court erred in overruling his motion to dismiss the indictment for pre-indictment delay, in excluding certain testimony of a police officer relating to the investigation and in failing to suppress Clark's confession on the ground it had been procured by promises of leniency. On appeal from the order of the motion court, Clark asserts that the motion court erred in denying his motion for post-conviction relief because his conviction was obtained in violation of his constitutional rights by reason of the delay and the destruction of some evidence. We affirm both the judgment of the trial court and the order of the motion court.

## DIRECT APPEAL

Clark does not challenge the sufficiency of the evidence. His points on appeal concern the thirteen year delay between the date he confessed to the crimes and the date Clark was indicted and the events that occurred during the police investigation of the crimes.

On November 1, 1975 J.D. Bracken and Thomas Jackson were shot to death in a tavern on Arlington Avenue in the City of St. Louis. A witness who heard the shots saw a man wearing a ski mask running from the tavern in an alley toward some vacant buildings. Police searched one of the vacant buildings and found a stocking cap, sweater, overalls, a nine millimeter Astra and a .38 Smith and Wesson pistol.

The evidence from the scene, the weapons, the spent casings, and blood, bullets and clothing from the bodies of the victims were delivered to the police laboratory. Laboratory personnel entered the receipt of this evidence in a log and issued receipts to the delivering individual. Fire arms, spent casings and bullets were tested at the Fire Arms Section of the lab. The nine millimeter Astra was identified as the murder weapon.

During their investigation police identified Charles Urskin Cherry as a suspect. On November 1, 1975 Cherry was arrested for the two homicides and the homicides were removed from the active files.

In December 1975 police obtained an Unlawful Flight to Avoid Prosecution Warrant (UFAP Warrant) for Clark's arrest in connection with an unrelated homicide. Approximately one year later, on December 3, 1976, FBI Special Agent (S.A.) Byron Sage was advised that a man using the name "Cherry" had been arrested for petty theft in Fresno, California and his fingerprints matched the fingerprints on the UFAP warrant issued for Clark. S.A. Sage brought Clark to the FBI office in

Fresno. On route to the FBI office, S.A. Sage advised Clark of his rights and provided him with a written warning and waiver of rights form. After arriving at the FBI office, S.A. Sage again gave Clark a copy of his rights. When asked about his ability to read and his education level, Clark said he had only a sixth grade education, but that he could read and write the English language. S.A. Sage asked Clark to read the form and went over it with him. Clark told S.A. Sage that he had read the form and understood it. Clark signed the form before S.A. Sage and another FBI agent.

Clark told the agents that he had used the alias "Charles Tony Cherry," as well as other aliases. He confessed to killing two people in a bar on Cote Brilliante in St. Louis in August 1975. He had been given information that these two persons were selling drugs in what he considered to be his territory. When he learned they were at the tavern, he hid two guns, a .38 Smith and Wesson and a nine millimeter Astra, as well as a ski mask, sweatshirt, and jeans, in a nearby vacant house. He went to the tavern, located the victims, and then returned to the vacant house for the guns. He changed into the clothes and returned to the tavern where he shot the victims with the nine millimeter Astra. He described where his shots had struck the victims. He escaped through an alley and ran back to the vacant house where he discarded his outer clothing and weapons. He drew a map showing the location of the murder scene and the route he took to get to the house. The agents transcribed his confession and Clark corrected, initialed and signed it.

S.A. Sage informed the St. Louis FBI office of the confessions. However, the details of this confession did not match the details of the crime for which the UFAP warrant had been issued. The warrant was dismissed then and Clark was released. The Fugitive Unit of the St. Louis Police Department was notified that Clark had been apprehended. S.A. Sage did not know if Clark's confession was forwarded to the St. Louis Police Department at that time.

During 1976 the St. Louis Police Department indexed homicide information by date, location, and victim. Under this indexing system Clark's confession would not have matched with the Jackson/Bracken homicides because Clark said the crimes took place in August, he said the crimes occurred at a tavern on Cote Brilliante and he did not name his victims. Jackson and Bracken had been killed on November 1 at a tavern on Arlington.

It was police policy at that time to clear a case from the index and remove it from the active files once a warrant application was made, whether or not that suspect was eventually charged. The Jackson/Bracken homicides case was placed on the inactive file when Charles Urskin Cherry was arrested, although he was apparently never charged.

At that time, the police laboratory would routinely request the disposal of evidence in a case after time had passed. Evidence destruction was authorized if there was no court action pending one year and one day after evidence was received. On January 3, 1977 the laboratory destroyed the clothing and the nine millimeter Astra and returned the .38 Smith and Wesson to the registered owner. The laboratory issued a memo authorizing the destruction and created vouchers for the destroyed evidence.

In November, 1989, thirteen years after Clark's confession, Detective Joseph Burgoon of the St. Louis Police Department Homicide Unit was reviewing old homicide files and discovered Clark's confession. He noted the similarity between the confession and the Jackson/Bracken homicides. On November 20, 1989 a grand jury indicted Clark, charging him with two counts of first degree murder.

Clark was tried before a jury. At trial the state introduced into evidence the police laboratory receipts for the delivery of the clothing, weapons, spent casings and bullets. It also introduced the photographs of the clothing and weapons. Clark did not testify and did not put on any evidence. In

closing argument defense counsel argued that the only evidence linking Clark to the crime was Clark's confession, which he argued had been coerced. Defense counsel also argued that any other evidence he might have been able to submit in Clark's defense was destroyed during the pre-indictment delay.

■ For his first point on direct appeal, Clark asserts the trial court erred in overruling his motion to dismiss the indictment because the thirteen year period between his confession and indictment constituted a state-caused prejudicial delay which deprived him of due process under the Missouri Constitution and under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

In his motion Clark asserted the delay was an intentional device to give a tactical advantage to the state and placed an impossible burden on him to prepare a defense because he could not find alibi witnesses and potential witnesses had died. On the third day of trial, the trial court overruled the motion to dismiss noting it had heard Det. Burgoon's testimony and evidence of the circumstances of the delay.

A defendant is protected against prejudice from pre-indictment delay by the applicable statute of limitations and by the Fifth Amendment's due process clause. *United States v. Marion*, 404 U.S. 307, 322–24, 92 S.Ct. 455, 464–65, 30 L.Ed.2d 468, 479–81 (1971); *State v. Robinson*, 696 S.W.2d 826, 830 (Mo.App.1985). In Missouri there is no statute of limitations for the crime of murder; a prosecution for murder may be commenced at any time. § 556.036 RSMo (1986). However, even if prosecution is not foreclosed by a statute of limitations, a defendant may claim prejudice due to the pre-indictment delay under the Fifth Amendment due process clause. *Robinson*, 696 S.W.2d at 830.

■ Under the due process clause, a defendant's case must be dismissed if the defendant shows that 1) the pre-indictment delay caused substantial prejudice to his or her right to a fair trial *and* 2) the prosecution intentionally delayed the process in

order to gain a tactical advantage over the defendant. *Marion*, 404 U.S. at 324, 92 S.Ct. at 465, 30 L.Ed.2d at 481; *State v. Griffin*, 848 S.W.2d 464, 467 (Mo. banc 1993); *Robinson*, 696 S.W.2d at 830. Any due process inquiry must consider the reasons for the delay as well as any resulting prejudice to the defendant. *Robinson*, 696 S.W.2d at 830.

A delay is prejudicial if it impairs the defendant's ability to defend himself. *State v. Franks*, 793 S.W.2d 543, 546 (Mo. App.1990); *Robinson*, 696 S.W.2d at 830. "The prejudice shown must be more than the 'real possibility of prejudice inherent in any extended delay; that memories will dim, witnesses will become inaccessible, and evidence will be lost.'" *Marion*, 404 U.S. at 325–26, 92 S.Ct. at 466, 30 L.Ed.2d at 481–82. A defendant must do more than speculate; he must indicate the nature of possible evidence which could be adduced. *Franks*, 793 S.W.2d at 546.

Clark asserts that he was prejudiced because, during the years prior to the indictment, three potential alibi witnesses became unavailable, physical evidence collected at the scene was destroyed, and the mother of one of the victims died. Clark did not identify the three unavailable witnesses nor did he make an offer of proof of their expected testimony. In his argument Clark does not indicate what the actual physical evidence might have been expected to show or how his defense would have been helped had the mother of the victim been alive to testify at trial. He has failed to show any prejudice.

Likewise, Clark has wholly failed to satisfy the second prong of the test for prejudicial delay. Clark has not shown, and does not now argue, that the state intended to gain a tactical advantage by the delay. Rather, he merely argues that law enforcement officers were negligent or reckless.

The record amply supports a determination that the delay was not intentional. At the time Clark confessed to the FBI agent in California, he had been arrested for, and was being questioned about, an unrelated murder. Had his confession been conveyed to the St. Louis Police Department at the

time, it would not have been matched under the police indexing system with the actual crime because it did not contain the three key indexing facts: the name of the victims, the correct date, or the correct location. Further, Det. Haug testified that the confession to a double homicide on Cote Brilliante was never brought to his attention while he was in the homicide unit. Once the confession was matched to the actual crime, the indictment was handed up within six days.

Clark also complains that the pre-indictment delay violated his Sixth Amendment right to a speedy trial. However, the Sixth Amendment does not apply to pre-indictment delay. *Marion*, 404 U.S. at 313–22, 92 S.Ct. at 459–64, 30 L.Ed.2d at 474–79; *Griffin*, 848 S.W.2d at 468. The trial court did not err in denying the motion to dismiss. Point one is denied.

■ For his second point on direct appeal, Clark contends that the trial court erred in not allowing him to introduce Det. Haug's testimony about his investigation of the Jackson/Bracken homicides, the arrest of Charles Urskin Cherry, the "clearing" of the case, and the destruction of the physical evidence. Clark argues that this trial court ruling denied him his right to a fair and impartial trial.

In his argument Clark asserts that the trial court erroneously excluded evidence that neighborhood children told investigating officers that Charles Urskin Cherry committed the homicides and Cherry was arrested, while admitting evidence that Clark used the alias of "Charles Tony Cherry." He also asserts that Det. Haug should have been allowed to testify regarding the "clearing" of the homicide case upon Cherry's arrest and the reason the evidence was destroyed.

A trial court has broad discretion in determining the admissibility of evidence. We will not disturb evidentiary rulings on appeal absent a clear abuse of discretion. *State v. Clark*, 711 S.W.2d 928, 932 (Mo. App.1986).

The state made an oral motion in limine to exclude certain evidence relating to Charles Urskin Cherry's arrest. The state informed the court it had no objection to evidence that Cherry had been arrested for the murder, but that it did object to evidence of the circumstances leading up to Cherry's arrest and the details of Cherry's background because Cherry was not connected to the crime. After a hearing the trial court sustained the motion on the ground that the evidence would have no purpose other than to raise an unwarranted inference that the crime had been committed by Cherry. During Det. Haug's trial testimony, Clark's attorney attempted to elicit the fact that some people identified Cherry as a suspect. The trial court sustained the state's objection on the grounds of hearsay, relevance and materiality.

The trial court admitted evidence that a man by the name of Charles Urskin Cherry was arrested and that he was not the same person as Clark. Det. Haug testified that a case is "cleared" when a suspect is arrested. Another police officer testified that Charles Urskin Cherry had been initially arrested as a suspect in the murder, that the case was no longer active after that arrest, and that he thereafter authorized the destruction of the clothing and weapons concerning the case. Thus, all of the evidence Clark contends was erroneously excluded was actually admitted at trial, except for the facts that led police to initially arrest Charles Urskin Cherry.

Clark contends that evidence that persons in the neighborhood told Det. Haug that Charles Urskin Cherry had committed the homicides was competent, relevant and material. We disagree.

■ Clark argues that he wanted to use the evidence of the out-of-court statements to the officer to show the possibility that another man committed the crimes. Clark does not address the hearsay objection or argue that the out-of-court statements were relevant for any reason other than for the truth of what was said. Used for this purpose, the statements would be inadmissible hearsay. *State v. Burke*, 809 S.W.2d 391, 399 (Mo.App.1990). Additionally, evidence is inadmissible if it has no effect other than to cast a bare suspicion on an-

other person or to raise a conjectural inference that another person committed the crime. *State v. La Rette*, 648 S.W.2d 96, 103 (Mo. banc 1983). There must be evidence that the other person committed some act directly connecting him with the crime so as to clearly implicate someone besides the accused as the guilty person. *State v. Stokes*, 638 S.W.2d 715, 723 (Mo. banc 1982); *State v. Umfrees*, 433 S.W.2d 284, 287–88 (Mo. banc 1968). The trial court did not err in sustaining the state's objection to this testimony. This point is denied.

■ For his third point on direct appeal, Clark claims the trial court erred in denying his motion to suppress his confession and in admitting that confession into evidence. Clark asserts that he had only a sixth grade education and that the FBI agents coerced his confession with promises of leniency or assistance.

■ A defendant is denied due process if his conviction is founded, in whole or in part, upon an involuntary confession. *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908, 915 (1964). Once a defendant objects to the admission of a confession, there must be a clearcut determination that the confession was in fact voluntary before it can be admitted. *Jackson*, 378 U.S. at 377–91, 84 S.Ct. at 1781–89, 12 L.Ed.2d at 915–24; *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986). The state must prove a confession's voluntariness by a preponderance of the evidence. *Id.* "Although the judge need not make formal findings of fact or write an opinion, his [or her] conclusion that the confession is voluntary must appear from the record with unmistakable clarity." *Sims v. Georgia*, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598 (1967).

■ The test for "voluntariness" is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time of the confession. *Lytle*, 715 S.W.2d at 915. In determining whether a confession was obtained by mental coercion, age, experience, intelligence, gender, lack of education, infirmity, and unusual susceptibility to coercion are relevant factors. *Id.; State v. Flowers*, 592 S.W.2d 167, 169 (Mo. banc 1979). Although courts take into consideration education and intelligence in determining voluntariness, these factors are not determinitive; the totality of the circumstances must be considered. *State v. Jack*, 813 S.W.2d 57, 60 (Mo.App.1991).

On appeal, we determine whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. *Lytle*, 715 S.W.2d at 915. Conflicts in the evidence are for the trial court to resolve and we defer to the trial court's superior position from which to determine credibility. *Id.*

The trial court conducted a hearing on Clark's motion to dismiss. The FBI agent who arrested Clark testified from a written log that he advised Clark of his constitutional rights several times. The agent testified that Clark indicated that he had read and understood his rights, that he could read and write the English language, and that he did not want an attorney. The agent also testified that Clark had been allowed to use the restroom on two occasions and received two sodas. The agent further testified that Clark had not been threatened, coerced, or physically mistreated in any way. Further, in the last sentence of his signed confession, Clark stated that no threats or promises had been made to him to furnish this statement. Clark did not confess to the crime for which the warrant had been issued, but instead confessed to crimes that he was not suspected of having committed and of which the agent knew nothing.

On the other hand, Clark testified that he felt afraid when he was arrested. He testified the agent "let me know I could be a hard-ass and make this hard on yourself, but you ain't going to hurt nobody but you." Clark took this statement to be threatening and he said he felt "trapped." Clark testified he had asked for an attorney immediately upon arriving at the FBI

office. He denied signing the warning and waiver of rights form and questioned whether the signature on the form was his. He admitted the agents had never physically touched him. He did not testify to any promises of leniency. After the hearing the trial court denied the motion to suppress.

The record of the suppression hearing reflects sufficient evidence from which the trial court could have determined that Clark's statement was voluntary. Although Clark's version of the circumstances surrounding the confession was different from the agent's, we defer to the trial judge's determination of credibility. The trial court did not err, plain or otherwise, in admitting Clark's confession into evidence. Point denied.

### POST–CONVICTION APPEAL

Clark asserts the motion court's denial of his motion for post-conviction relief was clearly erroneous because there was a thirteen year delay between the time he confessed and time he was indicted and he was denied due process because evidence was destroyed during this time.

In his motion for post-conviction relief, Clark alleged that he had been denied due process as a result of the pre-indictment delay because evidence had been destroyed. The motion was submitted without a hearing. In its conclusions of law and order the motion court ruled that the allegation of prejudicial delay was not cognizable because it was an allegation of trial court error which should be raised on direct appeal.

Post-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review. *Clemmons v. State*, 795 S.W.2d 414, 417 (Mo. App.1990); *Camillo v. State*, 757 S.W.2d 234, 239 (Mo.App.1988). If the allegations of trial error are constitutional violations, they are not cognizable unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal. *Clemmons*, 795 S.W.2d at 417. Issues actually raised on direct appeal can-

not be relitigated in a post-conviction proceeding. *Id.*

Clark raises the issue of prejudicial delay in the same point relied on in both his direct appeal and in his post-conviction appeal. He also argues that he was prejudiced by the destruction of evidence under this point. Because the issues of prejudicial delay and destruction of evidence could be, and in fact were, raised on direct appeal, these claims are not cognizable on post-conviction relief. The motion court's order denying post-conviction relief is not clearly erroneous.

The judgment of the trial court and the order of the motion court are affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.