STATE of Missouri, Plaintiff–Respondent,

v.

Theodore V. KLEINE, Defendant–Appellant.

No. SD 30313.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 13, 2011.

Rosalynn Koch, Columbia, for Appellant.

Chris Koster, Atty. General, Daniel N. McPherson, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Theodore V. Kleine ("Appellant") was convicted following a jury trial and sentenced by the court on January 13, 2010, of two counts of first-degree murder that took place in 1970. Appellant claims the trial court erred in overruling his motion to dismiss the charges against him for lack of prosecution and that the trial court plainly erred in allowing Appellant's ex-wife to testify against him. We find no error and affirm the conviction.

## Procedural History

Brian Bradford and Mary Lou Seutter, a minor, were murdered in 1970. Appellant was tried for first-degree murder in December 1970. The trial ended with a hung jury. The case was reset and passed numerous times between 1970 and 1976. The charges were later dismissed for failure to prosecute in April of 1976. On August 7, 2008, the State again charged Appellant with two counts of murder. Appellant moved to dismiss the proceedings against him for lack of prosecution, claiming the undue delay in prosecuting him violated his Fifth, Sixth, and Fourteenth Amendment rights. The trial court overruled the motion. The jury convicted Appellant of both counts on December 5, 2009; he was sentenced on January 13, 2010, to life imprisonment without parole for fifty years on each count.

## Point I: Motion to Dismiss

Appellant filed a motion to dismiss the charges against him for lack of prosecution; he claimed that the State's failure to bring him to a speedy trial before the case was dismissed in 1976 violated his right to a fair trial and that the delay of thirty-two years in prosecuting the charges violated his right to due process of law and right to a speedy trial. His first point relied on claims error in overruling that motion; he claims that he was prejudiced because he was not able to test the blood found on his clothing and that he was unable to use live testimony during portions of the trial. Specifically, Appellant claims the death of witnesses and the reading of statements from the first trial did not allow the jury to judge witness credibility because it could not assess the demeanor of the witnesses. He also claims that the delay caused one witness to fail to recall the body language

and import of Appellant's statements at the time he made them.

 We review the ruling on the motion to dismiss for an abuse of discretion. *State v. Keightley,* 147 S.W.3d 179, 184 (Mo.App. S.D.2004). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* Statutes of limitations provide the primary guarantee against the bringing of overly stale criminal charges. *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *State v. Robinson,* 696 S.W.2d 826, 830 (Mo.App. W.D.1985). The charges against Appellant do not have a statute of limitations. Sections 541.190 and 559.010, RSMo 1969, 556.036.1.[1]

 Even when charges are brought within the statute of limitations, due process has a limited role to play in protecting against oppressive delay. *Lovasco,* 431 U.S. at 789, 97 S.Ct. 2044. The test for determining whether charges should be dismissed for pre-indictment delay requires a defendant to show that the defendant was prejudiced by the delay and that the delay was intended by the prosecution to gain a tactical advantage over the defendant. *State v. Griffin,* 848 S.W.2d 464, 467 (Mo. banc 1993). The delay is prejudicial if it impairs the defendant's ability to defend himself. *State v. Clark,* 859 S.W.2d 782, 786 (Mo.App. E.D.1993). "Any claimed prejudice resulting from delay must be actual and apparent on the record or by reasonable inference." *State v. Weeks,* 982 S.W.2d 825, 836 (Mo.App. S.D. 1998). "Speculative or possible prejudice is not sufficient." *Id.*

1. All references to statutes are to RSMo 2000, unless otherwise specified.

██ The first claim of prejudice involves Appellant's contention that he was unable to test the DNA to rebut the implication that Appellant shot the two victims and got blood on his clothes. Appellant asserted that the blood was present on his clothing because he had cut himself on his arm. DNA testing was attempted in 2007, but the blood stains were too degraded to be tested. Appellant cannot show whether the testing would have been exculpatory or inculpatory. As such, the claim is speculative. Appellant was originally charged in 1970. Apparently, DNA testing was not available to the defense at that time. There is no information in the record regarding when DNA testing was possible on the blood stains. In other words, it is possible that the sample was not able to be tested one year after the original dismissal. The standard governing a claim of a denial of a defendant's constitutionally guaranteed access to evidence depends on the circumstances surrounding the denial or destruction of the evidence. *Illinois v. Fisher*, 540 U.S. 544, 547–48, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004). In *Fisher*, the Supreme Court explained:

> [W]hen the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. In *Youngblood*, by contrast, we recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57 [109 S.Ct. 333]. We concluded that the failure to preserve this "potentially useful evidence" does not violate due process *"unless a criminal defendant can show bad faith*

> *on the part of the police." Id.* at 58 [109 S.Ct. 333] (emphasis added).

*Fisher*, 540 U.S. at 547–48, 124 S.Ct. 1200 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)) (other citations omitted).

██ In *Youngblood*, the defendant was prosecuted for child molestation, sexual assault, and kidnapping. 488 U.S. at 53, 109 S.Ct. 333. Authorities collected biological samples from the ten-year-old victim as well as the victim's clothes, which were found to contain semen stains. *Id.* at 53–54, 109 S.Ct. 333. The defendant was unable to test the biological samples by the time of trial because the samples had degraded due to lack of refrigeration and could not be tested using then-available technology. *Id.* at 54, 109 S.Ct. 333. Even though the biological evidence presumably would have identified the actual perpetrator, the court nevertheless held that a showing of bad faith was required since it was dealing "with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57, 109 S.Ct. 333. In short, the "[f]ailure to preserve potentially useful evidence does not constitute the denial of due process without a showing of bad faith." *State v. Burns*, 112 S.W.3d 451, 455 (Mo.App. W.D.2003) (citing *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333).

Here, the State did not act in bad faith. The blood evidence naturally degraded over time to a point that made DNA analysis unattainable. As such, we cannot state that there was prejudice to Appellant in filing the charges at a time when potential testing was not possible.

██ Appellant's second claim of prejudice is that witnesses had passed away and could not testify or be cross-examined live, depriving the jury of the opportunity to

assess the witnesses' credibility. That claim is inherent in every trial. Witnesses cannot testify sometimes a year after the charges have been brought. In *Clark*, the defendant claimed he was prejudiced by the thirteen-year delay between his confession and indictment because, among other reasons, "during the years prior to the indictment, three potential alibi witnesses became unavailable [and] physical evidence collected at the scene was destroyed." *Clark*, 859 S.W.2d at 786. The court found that the defendant failed to show any prejudice because he did not identify the unavailable witnesses or make an offer of proof of their expected testimony, or indicate what the physical evidence was expected to show. *Id.* In this case, Appellant complains the jury was deprived of the opportunity to assess the credibility of unavailable witnesses. Appellant's claims of prejudice do not rise above the speculative level. Therefore, he has not convinced this Court that he was prejudiced by the delay.

Furthermore, and more importantly, even if he was prejudiced, Appellant must show that the delay was intended to gain a tactical advantage over him. We are not persuaded of this premise. A review of the evidence indicates that his confession to his girlfriend at the time of the first admission and then the further admission during the marriage was probably the reason why charges were brought a second time. The State did not have the information concerning the confessions until just prior to the bringing of the charges the second time; there was no delay in filing charges solely to gain a tactical advantage. Point I is denied.

### Point II: Kleine's Testimony

Appellant married Deanne Kleine ("Kleine") in 1995. Kleine testified at the trial that prior to the marriage Appellant told her that he had been prose-

cuted for a double homicide. When she asked him if he had done it, Appellant looked over his shoulder and said "yes." She testified that when she persisted in questioning Appellant about the incident, he became upset and said that "the m-f-er was suicidal so I gonna-crying [sic] he was going to kill himself so I said, boom, you're dead and then she went to run and I said, boom, you're dead, too." Appellant and Kleine divorced in 2001.

In Appellant's second point, he argues that the trial court plainly erred in permitting Kleine to testify about a statement he made during the marriage to her because that evidence was barred by the marital confidential communication privilege ("marital privilege"). Section 546.260.1 provides that "in no case shall husband or wife . . . be permitted to disclose confidential communications had or made between them in the relation of such husband and wife." In other words, "[t]he marital privilege prohibits testimony concerning statements privately communicated between spouses during their marriage." *State v. Hopkins*, 140 S.W.3d 143, 159 (Mo.App. E.D.2004). "This privilege is intended to encourage full disclosure and trust between the parties to a marriage.'" *Id.* (quoting *State v. Byrd*, 676 S.W.2d 494, 501 (Mo. banc 1984)).

Kleine was not married to Appellant when he first told her that he had been prosecuted for a double murder. She testified that when she then asked Appellant if he had committed the murders, he "looked over his shoulders and said yes." During the marriage, according to Kleine, Appellant made a further admission, "G-d babe, the m-f-er was suicidal so I gonna-crying [sic] he was going to kill himself so I said, boom, you're dead and then she went to run and I said, boom, you're dead, too." A limiting instruction was given by the court that the statements made by

Kleine during the marriage could only be considered on the offense of the murder of the minor victim.

■■■■ We review the ruling of the trial court for plain error because Appellant did not allege error in permitting Kleine to testify as to statements he made to Kleine during their marriage in his motion for a new trial. *State v. Cardona–Rivera*, 975 S.W.2d 200, 207 (Mo.App. S.D. 1998) (a trial court's ruling on a motion in limine is interlocutory and a claim of error in a new trial motion relating to the overruling of such a motion is insufficient to preserve the matter for appellate review). Furthermore, Appellant argued at trial the version of section 546.260 that was in effect in 1970 should have been applied in the case. He is not making that argument now. To properly preserve an objection to evidence for appellate review, the theory raised on appeal must be the same as the theory raised before the trial court. *State v. Goins*, 306 S.W.3d 639, 645–46 (Mo.App. S.D.2010). "It is incumbent on the objecting party to make the basis of his objection reasonably apparent to the court in order to provide the opponent an opportunity to correct the error and the court to correctly

rule on it." *Id.* (quoting *State v. Boydston*, 198 S.W.3d 671, 674 (Mo.App. S.D.2006)). Appellant now argues that the trial court plainly erred in permitting Kleine to testify about the contents of a statement Appellant made to Kleine during their marriage because the statement was privileged under the current version of section 546.260.

■■■ In reviewing for plain error, we first determine that the record discloses a facial basis for concluding that evident, obvious, and clear error has occurred. *State v. Green*, 307 S.W.3d 197, 201 (Mo. App. S.D.2010). If we determine that facial basis, we review it to determine if, as a result of that facial error, Appellant suffered a manifest injustice. *Id.*

■■■■ We reject Appellant's claim because section 546.260.[2] allows Kleine's testimony when the victim is under the age of eighteen.[3] There is no question that one of the victims was under the age of eighteen at the time of her death. Furthermore, we find no prejudice because Kleine testified that Appellant confessed prior to the marriage when there was no spousal

**2.** Section 546.260.2 was enacted in 1985. The section provides that "in any criminal prosecution under chapter 565, 566 or 568, RSMo, involving an alleged victim under the age of eighteen, a spouse shall be a competent witness against a defendant spouse, and no spousal privilege as set forth in subsection 1 of this section or any other provision of law shall exist." Section 546.260.2. Appellant was charged with first-degree murder under section 559.010, RSMo 1969, which was found in chapter 559 (entitled "Offenses Against the Person") at the time of the crime. Chapter 559 was transferred to chapter 565 between 1977 and 1978, and first-degree murder is now criminalized in section 565.020. Chapter 565 is entitled "Offenses Against the Person." Therefore, the provision found in section 546.260.2, providing that in any criminal prosecution under chapter 565 no marital privilege exists, is equally applicable to

prosecutions for first-degree murder under section 565.020's predecessor, section 559.010, because in 1985, when section 546.260.2 was enacted, first-degree murder was criminalized in chapter 565.

**3.** We also note the version of section 546.260 applicable to this case is the version in effect at the time of the trial, rather than at the time of the crime. *State v. Alexander*, 729 S.W.2d 486, 489 (Mo.App. W.D.1987) (holding the rules regarding whether a spouse is allowed to testify under section 546.260 to be procedural). Under *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007), procedural laws can be applied retrospectively without violating Missouri Constitution Article I, section 13, while substantive laws cannot.

privilege.[4] Section 546.260.1. Furthermore, the jury heard an admission made to Appellant's brother the day of the murders. In light of the cumulative nature of Appellant's admissions, allowing Kleine's testimony into evidence clearly did not subject Appellant to manifest injustice. We therefore find no trial court error, plain or otherwise, and deny Point II.

The judgment is affirmed.

SCOTT, C.J., and FRANCIS, J., concur.

---

4. We are mindful that Appellant attempted to impeach Kleine with the statement that she also contended that angels spoke to her, that she had threatened Appellant and her sister with a knife, and that she suffered a head injury that caused her problems with her memory. The jury heard that testimony and still convicted Appellant. We will not second-guess that determination of credibility.