

# In the Missouri Court of Appeals
## Eastern District
### WRIT DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. JENNIFER M. WINKLER, | ) ) ) | No. ED104030 |
| Relator, | ) ) ) | Writ of Mandamus |
| vs. | ) ) | |
| THE HONORABLE STEVEN H. GOLDMAN, Judge of the 21st Judicial Circuit Court of St. Louis County, Missouri, | ) ) ) ) | Honorable Steven H. Goldman |
| Respondent. | ) ) | FILED: April 5, 2016 |

## OPINION

Jennifer M. Winkler ("Relator") has filed a Petition seeking a Writ of Mandamus and/or Prohibition compelling the trial court ("Respondent/trial court") to disqualify the St. Louis County Prosecuting Attorney's Office ("Prosecuting Attorney's Office") from her criminal case and/or to prevent Respondent from proceeding to trial. Relator further seeks to restrain Respondent from unsealing court records pertaining to an inquiry into violations of Relator's due process/Sixth Amendment rights.

Preliminarily, we find that Relator's Sixth Amendment and due process rights offer a compelling interest sufficient to seal portions of the record from public view. We further uphold Respondent's factual findings and legal conclusions and make additions to his remedy.

<u>Factual and Procedural Background</u>

In the underlying action, Relator was charged with murder in the second degree (in violation of Section 565.012, RSMo 2000[1]) and felony abuse of a child (Section 568.060) regarding the 2011 death of L.R., a minor. Pursuant to state law, juvenile proceedings were initiated concerning custody of the children of Relator and her husband, Steven Winkler ("Husband"). Attorney Neil Bruntrager ("Defense Counsel") entered his appearance in the juvenile matter on behalf of both Relator and Husband. Defense Counsel was the attorney of record for both Husband and Relator in the juvenile matter from late 2011 until November 2014.

Defense Counsel also represented Relator on the criminal charges initiated in December 2011. During this time period, Defense Counsel met numerous times with both Relator and Husband to discuss the interrelated juvenile and criminal cases. Relator entered an *Alford* plea to lesser charges in August 2014. At that time, Defense Counsel informed the Prosecuting Attorney's Office (including an assistant prosecutor who later interviewed Husband) that he represented both Relator and Husband in the juvenile custody case.

In November 2014, the Honorable Tom W. DePriest, Jr., on his own motion, set aside Relator's *Alford* plea. The same day, Husband filed a dissolution of marriage petition. Husband hired new counsel to represent him in the divorce and juvenile cases. Husband's new lawyer informed Defense Counsel of the dissolution in mid-November 2014 and requested that Defense Counsel withdraw as Husband's attorney from the juvenile cases. Within two days, Defense Counsel withdrew his representation of both Relator and Husband in the juvenile proceedings, but continued to represent Relator in the criminal case.

Judge DePriest recused himself in January 2015. Thereafter, the case was reassigned to Respondent. In September 2015, the Prosecuting Attorney's Office received a multiple page

---

[1]Unless otherwise indicated, all further statutory references are to RSMo 2000, as amended.

email regarding Husband's thoughts about Relator, their marriage, their history together, and information about the pending cases. The Prosecuting Attorney's Office forwarded this information to Defense Counsel. In October 2015, Relator moved to exclude documents acquired by the Prosecuting Attorney's Office on the basis of violations of Relator's spousal privilege,[2] attorney-client privilege, and work-product privilege. Nevertheless, assistant prosecuting attorneys interviewed Husband on November 17, 2015, and questioned him about Relator's trial strategy, defenses, and other privileged information. The recorded interview was sent to Defense Counsel.

On November 23, 2015, arguing that assistant prosecutors had breached her attorney-client and work-product privileges during their meeting with Husband, Relator moved to disqualify the Prosecuting Attorney's Office and/or dismiss all charges. Respondent held three hearings on the matter between November 2015 and January 2016. Respondent allowed the St. Louis Post-Dispatch LLC and its reporter (collectively, the "Post-Dispatch") to intervene for the limited purposes of a hearing regarding the confidentiality of evidence and public access involving the case. After a hearing on January 7, 2015, Respondent denied the Post-Dispatch's motion for access.

On February 8, 2016, in an order that remains sealed, Respondent entered findings of fact and conclusions of law. Respondent found that Defense Counsel had, in August 2014, told one of the assistant prosecutors that Defense Counsel jointly represented Husband and Wife in the juvenile case. Respondent further found assistant prosecutors "did not understand the significance of this attorney-client relationship," that they "should have known that their

---

[2] There is no claim of violation of spousal privilege in this writ proceeding, since that privilege does not apply in a criminal prosecution under chapter 565 when the alleged victim is under the age of eighteen. Section 546.260.2; State v. Kleine, 330 S.W.3d 805, 811 (Mo. App. S.D. 2011).

November meeting with [Husband . . .] could be a violation of [Relator's] due process rights," but that they nevertheless "violated the attorney-client relationship" between Relator and Defense Counsel. Respondent held that, because the assistant prosecutors did not understand they violated Relator's attorney-client privilege, there was no intentional fraud upon the court. Regardless, Respondent concluded that assistant prosecutors had breached Relator's attorney-client and work-product privileges, thereby violating Relator's due process and Sixth Amendment rights. Respondent further concluded that information learned by the Prosecuting Attorney's Office provided a tactical advantage by providing previously unknown information and possible trial strategy. Respondent found these violations prejudicial to Relator and excluded certain evidence in an attempt to cure the prejudice. Respondent also ordered the case unsealed, except for the juvenile files (and mention of those files' content elsewhere in the pleadings).[3]

Contending that Respondent's remedy, especially its reliance on a fraud upon the court standard, does not adequately protect her interests, Relator petitioned this Court for a writ of mandamus and/or prohibition, seeking to compel Respondent to disqualify the Prosecuting Attorney's Office and/or to prevent Respondent from proceeding to trial. Relator further seeks to restrain Respondent from unsealing court records pertaining to the trial court's inquiry into her attorney-client and work-product privileges.

Relator filed her Petition for Writ of Mandamus and/or Prohibition along with a Motion for Leave to Proceed Under Seal and a Motion for Leave to file Exhibits Under Seal. The latter motion was granted in part. We issued a Preliminary Order in Mandamus. The Prosecuting Attorney's Office filed an Answer and Suggestions in Opposition.

---

[3] In an order entered the next day, Respondent ordered that the files remained sealed pending our review.

The day we issued a Preliminary Order in Mandamus, the Post-Dispatch filed an entry of appearance as Intervenor in this court. Relator opposed the Post-Dispatch's appearance. The Post-Dispatch filed a Motion to Reconsider our order granting Relator permission to proceed under seal and filed Suggestions in Opposition to Relator's Petition on the issue of sealing court records.

In the interests of justice, and after detailed review of the voluminous record (including multiple exhibits and transcripts), the Court dispenses with further briefing in this matter as permitted under Rule 84.24(j). We deny in part Relator's request to bar the Post-Dispatch from these proceedings, and allow the Post-Dispatch's limited appearance for the same narrow purpose as in the trial court: to contest the sealing of evidence and denial of public access. We make the Preliminary Order in Mandamus permanent in part as follows.

<u>Maintaining Matters Under Seal</u>

Because it colors the analysis below, we turn first to the Post-Dispatch's argument that the entirety of the proceedings in the trial court and in this court should be matters of public record. Though there is a presumption in favor of the public's right of access to court records, that presumption can be overcome by a "compelling justification" for sealing court records. <u>Transit Cas. Co. ex rel. Pulitzer Publ'g Co. v. Transit Cas. Co. ex rel. Intervening Emps.</u>, 43 S.W.3d 293, 301 (Mo. banc 2001). Courts must "demonstrate a recognition" of the presumptive right of access, and must offer some explanation for keeping records from public view. <u>Id.</u> at 300.

We find Relator's Sixth Amendment and due process rights, including her right to a future fair trial, a compelling interest sufficient to seal the record of the inquiry into the scope of the Prosecuting Attorney's Office's breach of Relator's attorney-client privilege. The instant controversy stems from the inquiry of the Prosecuting Attorney's Office into conversations

5

between Relator and her criminal defense attorney. The Sixth Amendment provides that an accused shall enjoy the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.[4] The right, which has been called "fundamental to our system of justice," assures "fairness in the adversary criminal process," U.S. v. Morrison, 449 U.S. 361, 364 (1981), and encompasses the right to confer with one's lawyer, Geders v. United States, 425 U.S. 80 (1976). Respondent, who likewise held Relator's Sixth Amendment rights sufficient to seal proceedings related to her attorney-client privilege, allowed the Post-Dispatch to appear in court and argue for access, thereby acknowledging the public's right of access to the courts. Holding that Respondent acted within his discretion to seal the record, we have considered all reasonable alternatives regarding closure of the record. In considering what access the public should have to these writ proceedings, we have set out to narrowly tailor a remedy that both acknowledges the public's right to access and, more importantly, respects the Relator's rights to a fair trial in the future.

As a practical matter, our conclusion limits the discussion below to generalities, since publicly delving into the specifics of Respondent's inquiry into the Prosecuting Attorney's actions would magnify the intrusion into Relator's Sixth Amendment rights and effectively sanction speculation about privileged discussions. We are keenly aware of the gravity of the public's interest in open proceedings and of the presumption in favor of the public's right of access to court records. However, Relator's Sixth Amendment rights, which encompass both her attorney-client relationship and her right to a fair trial, overcome that presumption here. See Geders, 425 U.S. 80; State v. Hartman, 479 S.W.3d 692 (Mo. App. W.D. 2015). Given the nature

---

[4] The Sixth Amendment's right to counsel is applied to the states through the Fourteenth Amendment. State ex rel. Mo. Pub. Def. Comm'n, 298 S.W.3d 870, 874 (Mo. banc 2009) (citing Gideon v. Wainwright, 372 U.S. 335, 339 (1963)).

of the ongoing case and the serious due process violations found by Respondent, we are unwilling to set a course that potentially treads upon Relator's Sixth Amendment and due process rights. See U.S. v. Levy, 577 F.2d 200, 210 (3d Cir. 1978) (noting, in dismissing an indictment due to a Sixth Amendment violation, the permanently deleterious effects of releasing a criminal defendant's privileged attorney-client communications into the public domain). As a result, we deny the request of the Post-Dispatch to unseal the record, except as noted below.

Standard of Review

Missouri appellate courts have the authority to issue and determine original remedial writs, including the extraordinary writ of mandamus. See MO. CONST. art. V, sec. 4.1. A litigant seeking relief by mandamus must allege and prove that he or she has a clear, unequivocal, specific right to a thing claimed. State ex rel. Hewitt v. Kerr, 461 S.W.3d 798, 805 (Mo. banc 2015). Mandamus is appropriate where a party has no remedy through appeal, and ordinarily does not control the exercise of discretionary powers. State ex rel. Valentine v. Orr, 366 S.W.3d 534, 538 (Mo. banc 2012). Because factual inquiries lie within a trial court's discretion, we defer to Respondent on those issues because he "is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other intangibles which may not be completely revealed by the record." White v. Dir. of Revenue, 321 S.W.3d 298, 308–09 (Mo. banc 2010) (internal quotation marks and citation omitted).

But if a respondent's actions are wrong as a matter of law, then he or she has abused any discretion he or she may have had, and mandamus is appropriate. Valentine, 366 S.W.3d at 538. We accordingly evaluate a trial court's conclusions of law de novo. See State ex rel. Nothum v. Walsh, 380 S.W.3d 557, 561 (Mo. banc 2012); Delta Air Lines, Inc. v. Dir. of Revenue, 908 S.W. 2d 353, 355 (Mo. banc 1995). Respondent's remedy presents us with a mixed question of

7

law and fact, where we follow the same principles: we defer to the trial court's factual findings so long as they are supported by competent, substantial evidence, but will review *de novo* the application of the law to those facts. <u>Rhea v. Sapp</u>, 463 S.W.3d 370, 375 (Mo. App. W.D. 2015).

Discussion

Our thorough review of the record leads us to conclude there was substantial evidence to support Respondent's factual finding that assistant prosecutors breached Relator's attorney-client privilege during an interview with Husband on November 17, 2015. In his judgment, Respondent found that Defense Counsel, over a year before assistant prosecutors interviewed Husband, told one of those assistant prosecutors about the joint representation of Husband and Relator. In addition, Respondent further found that Relator's October 2015 motion to exclude the e-mails received by the Prosecuting Attorney's Office relied in part on Relator's invocation of her attorney-client and work product privileges. We find support in the record for Respondent's findings and accordingly adopt these factual conclusions as our own. <u>See</u> <u>State ex rel. Jackson Cty. Prosecuting Att'y v. Prokes</u>, 363 S.W.3d 71, 75 (Mo. App. W.D. 2011) (<u>citing</u> <u>Murphy v. Carron</u>, 536 S.W.2d 30, 32 (Mo. banc 1976)).

Further, we discern no legal error in Respondent's application of facts to the attorney-client privilege analysis. The "common interest" doctrine allows parties with a community of interests to preserve the privilege's protections where the parties had "joined forces for the purpose of obtaining more effective legal assistance." <u>Nidec Corp. v. Victor Co. of Japan</u>, 249 F.R.D. 575, 578 (N.D. Cal. 2007). <u>See also</u> <u>Lipton Realty, Inc. v. St. Louis Hous. Auth.</u>, 705 S.W.2d 565, 570 (Mo. App. E.D. 1986); <u>Commerce Bank v. U.S. Bank Nat'l Ass'n</u>, No. 13-CV-00517-BCW, 2015 WL 9488395, at *2 (W.D. Mo. Aug. 18, 2015). Respondent held that assistant prosecutors "should have known" their meeting with Husband had the potential to

8

violate Relator's attorney-client privilege because of the common interest between Relator and Husband. The assistant prosecutors nevertheless violated her due process rights.

Additionally, we agree with the trial court's conclusion that the work product information learned by the assistant prosecutors provided a tactical advantage to the prosecution sufficient to show substantial prejudice. Respondent sought to remedy these violations by prohibiting the Prosecuting Attorney's Office from using, for any purpose, any of Relator's statements to Relator's attorney or other work product from meetings with defense counsel. Respondent additionally ruled that its remedy did not preclude the use of other statements of Relator (including similar statements to police investigators), or regarding Relator's husband's independent thoughts of the events.

We generally agree with Respondent that his remedy helps protect Relator's Sixth Amendment and due process rights, but hold that his use of a "fraud upon the court" standard rather than a constitutional analysis inherently underestimated possible damage to Relator's rights, thereby constituting an abuse of discretion.

We are also mindful of the Prosecuting Attorney's position that the exclusion of evidence would eliminate any prejudice to Relator and is the sole appropriate remedy. The Prosecuting Attorney relies on Weatherford v. Busey and U.S. v. Morrison in support of that proposition. We note that in Weatherford, no evidence tainted by the breach of attorney-client privilege ever found its way to prosecutors, Weatherford, 429 U.S. 545, 558 (1977), and in Morrison, the breach of attorney-client privilege revealed no information pertinent to the defendant's case, Morrison, 449 U.S. 361, 362–63 (1981). Here, on the other hand, prosecuting attorneys elicited information protected by the attorney-client privilege, and Respondent found that information prejudicial to Relator. Instead of following a narrow outcome inapposite to this case, we must

9

honor a broader requirement articulated in <u>Morrison</u>: that we "identify and neutralize the taint by *tailoring relief appropriate in the circumstances* to assure the defendant the effective assistance of counsel and a fair trial." <u>Id.</u>, 449 U.S. at 365 (emphasis here). The procedural posture of this case, where we must craft forward-looking relief, makes our analysis inherently different than in <u>Weatherford</u> (where the ultimate legal analysis occurred after trial) and <u>Morrison</u> (where analysis followed a conditional guilty plea).

Given that the entire Prosecuting Attorney's Office has had access to privileged materials, and that proceedings in this murder case are ongoing, it would be error to conclude we can prospectively quantify and neutralize the taint of the attorney-client privilege and due process violations simply by excluding evidence. We have concluded that "the bell cannot be unrung." Therefore, we order that the Prosecuting Attorney's Office is disqualified and a special prosecutor must be appointed.

This case is unique. The parties have not provided, and our research has not revealed, Missouri cases regarding motions to disqualify a prosecuting attorney's office for violating a criminal defendant's Sixth Amendment rights. However, federal cases about attorney disqualification provide some instruction. In making our decision, we apply strict scrutiny to motions to disqualify, <u>Droste v. Julien</u>, 477 F.3d 1030, 1035 (8th Cir. 2007); we balance the interests of the attorneys, their clients, and the public, <u>Arnold v. Cargill Inc.</u>, No. 01-2086, 2004 WL 22003410, at *13 (D. Minn. 2004); and we resolve any doubts in favor of disqualification, <u>Coffelt v. Shell</u>, 577 F.2d 30, 32 (8th Cir. 1978). We also find guidance in <u>State v. Burns</u>, a venerable case where the Supreme Court of Missouri found an assistant prosecutor's unintentional misconduct (via access of confidential material) so inimical to "generally recognized concepts of proper conduct of prosecuting officials" as to warrant a new trial. <u>Burns</u>,

10

322 S.W.2d 736, 741–42 (Mo. 1959). Here, since there are ongoing criminal proceedings, our forward-looking remedy must be crafted to remove any appearance of impropriety. As noted in State v. Boyd, a "prosecuting attorney is a quasi-judicial officer, an arm of the state [who must] assure a fair trial and avoid impropriety in any prosecution. *Equally important is the duty to avoid any appearance of impropriety*." Boyd, 560 S.W.2d 296, 297 (Mo. App. 1977) (emphasis here). "The preservation of the public trust in both the scrupulous administration of justice and in the integrity of the bar is paramount." Arnold, 2004 WL 22003410, at *14.

We uphold Respondent's rulings regarding what evidence cannot be utilized, and add that Respondent will have a continuing duty to not allow use of other information related to the attorney-client and work product violations. We further order the Prosecuting Attorney's Office to purge all excluded evidence from their files before turning those files over to a special prosecutor, and to refrain from discussing the excluded information with the special prosecutor.

Due to the ongoing case and serious due process violations found by Respondent, this Court's Order of February 25, 2016 granting leave to file Under Seal Exhibits A, B, C, D, E, F, G, H, J, K, L, M, O, and P remains in effect. All filings made in this Court shall remain sealed except this Opinion; all other orders of this Court; the Writ Summary; Motions to Seal; Exhibits I, N, and Q; and all filings by the Post-Dispatch.

Conclusion

We deny Relator's request to bar the Post-Dispatch from these proceedings and allow the Post-Dispatch's limited appearance for the purpose of advocating for public access and against the sealing of the record.

Our Preliminary Order in Mandamus is made permanent in part. We direct Respondent to order the Prosecuting Attorney's Office disqualified from Relator's criminal case and to appoint a special prosecutor. We also direct Respondent to vacate that portion of his order dated

February 8, 2016, unsealing the court files except as to the juvenile records. Respondent shall enter an order sealing not only those portions of the file referencing the juvenile records, but also those portions of the file containing information related to assistant prosecutors' interview with Husband on November 17, 2015. We deny Relator's request for dismissal of the indictment.

_Mary K. Hoff_
Mary K. Hoff, Acting Presiding Judge

Robert G. Dowd, Jr, Judge and Lisa P. Page, Judge, concur.