SUPREME COURT OF MISSOURI
 en banc
State ex rel. JOHN GARRABRANT, ) Opinion issued November 9, 2021
Prosecuting Attorney of Ozark County, )
 )
 Relator, )
 )
v. ) No. SC98875
 )
THE HONORABLE CALVIN HOLDEN, )
 )
 Respondent. )

 ORIGINAL PROCEEDING IN MANDAMUS

 A grand jury indicted Rebecca Ruud for various charges relating to the death of her

minor daughter. During pretrial proceedings, the State of Missouri sought a ruling from

the circuit court about whether it could use incriminating evidence from a digital recording

between Ruud and her lawyer’s staff. Finding the attorney-client privilege protected the

content of the digital recording, the circuit court excluded the digital recording from any

use at trial. The State petitioned this Court for a writ of mandamus directing the circuit

court to vacate its order. This Court finds the attorney-client privilege safeguards the

digital recording, but Ruud waived this privilege when she voluntarily disclosed the

recording to a third party. Therefore, the circuit court erred in excluding the digital
recording, and the preliminary writ of mandamus previously entered by this Court is now

made permanent.

 Factual and Procedural History

 On September 20, 2017, an Ozark County grand jury returned an indictment against

Ruud and her then-husband, Robert Peat Jr., charging them with first-degree murder,

felony abuse or neglect of a child resulting in death, second-degree murder, tampering with

physical evidence in a felony prosecution, and abandonment of a corpse, all related to the

killing of Ruud’s minor daughter. Shortly before the charges were brought, Ruud sought

and obtained legal representation from the Missouri State Public Defender’s Office

(“MSPD”). On August 11, 2017, Ruud met with MSPD investigator Nina Lane and legal

assistant Kathy Holder. Unbeknownst to Lane and Holder, Ruud recorded the entirety of

their conversation on a digital recording device.

 Prior to her arrest on the charges, Ruud gave an unsealed box of personal belongings

to Peat to store in preparation for an over-the-road truck driving trip. One of the items in

the box was the digital recording of Ruud’s meeting with Lane and Holder. Unaware of

the recording, Peat placed the unsealed box in a bedroom closet in his parents’ house, where

it remained for several years.

 In late 2019, Peat discovered the recording in the unsealed box. Peat’s attorney

contacted the State, and Peat spoke with a member of the Ozark County sheriff’s office.

He informed the sheriff’s office he had discovered the digital recording and it included

incriminating statements made by Ruud. Peat surrendered the digital recording device to

the sheriff’s office that same day, and it has remained in the sheriff’s custody since.

 2
 The State filed a motion in limine seeking a ruling about whether the recording was

privileged and whether the State could use the recording as evidence against Ruud at trial.

Finding the attorney-client privilege protected the recording, the circuit court excluded its

use at trial for all purposes. The State filed a motion to reconsider, which the circuit court

overruled. The State filed a petition for writ of mandamus with the court of appeals, which

denied the petition. The State then sought a writ of mandamus from this Court directing

the circuit court to rescind its order declaring the digital recording privileged and excluding

the use of the recording at trial. This Court issued a preliminary writ of mandamus

directing the circuit court to take no further action in the matter other than rescinding its

order. The State now seeks to make the preliminary writ permanent. 1

 Standard of Review

 For the Court to grant mandamus relief, a litigant “must allege and prove he has a

clear, unequivocal, specific right to a thing claimed.” Furlong Cos., Inc. v. City of Kan.

City, 189 S.W.3d 157, 166 (Mo. banc 2006). Mandamus is an appropriate means to review

a circuit court’s order pertaining to an item’s privileged nature. See State ex rel. Atchison,

Topeka & Santa Fe Ry. Co. v. O’Malley, 898 S.W.2d 550, 551-52 (Mo. banc 1995); see

also St. Louis Little Rock Hosp., Inc. v. Gaertner, 682 S.W.2d 146, 148 (Mo. App. 1984)

(citing State ex rel. Hudson v. Ginn, 374 S.W.2d 34 (Mo. banc 1964)). When a circuit

court erroneously limits the access and use of evidence on the ground of privilege,

a writ of mandamus is an appropriate remedy to correct the court’s error. Enke v.

1
 This Court has the authority to issue original remedial writs pursuant to article V, section
4.1 of the Missouri Constitution.
 3
Anderson, 733 S.W.2d 462, 465 (Mo. App. 1987). In addition, a writ of mandamus is the

appropriate method of relief when the State is precluded from using evidence at trial in a

criminal matter because “[t]he State is barred by double jeopardy principles from obtaining

a new trial based on the erroneous exclusion of evidence in a trial which result[s] in a

defendant’s acquittal.” State ex rel. Jones v. Prokes, WD84255, 2021 WL 1618002, *3

(Mo. App. Apr. 27, 2021) (citing Smalis v. Pennsylvania, 476 U.S. 140, 145-46 (1986)).

 Analysis

 Attorney-Client Privilege

 “The attorney-client privilege protects confidential communications between an

attorney and client concerning representation of the client.” State ex rel. Polytech, Inc. v.

Voorhees, 895 S.W.2d 13, 14 (Mo. banc 1995) (internal quotation marks and alterations

omitted). Attorney-client privilege “exists for the benefit of the client,” and “it may be

invoked by either the attorney or the client.” Id. (internal quotation marks omitted). The

attorney-client privilege attaches to: (1) “information transmitted by voluntary act of

disclosure”; (2) “between a client and his lawyer”; (3) “in confidence”; and (4) by a means

which, so far as a client is aware, discloses the information to no third parties other than

those reasonably necessary for the transmission of the information or for the

accomplishment of the purpose for which it is to be transmitted. State ex rel. Great Am.

Ins. Co. v. Smith, 574 S.W.2d 379, 384 (Mo. banc 1978). A party cannot claim

attorney-client privilege for communications conducted when an unnecessary third party

is included in the communications. See State Farm Mut. Auto. Ins. Co. v. Allen, 744

S.W.2d 782, 787 (Mo. banc 1988).

 4
 Ruud’s communication with Lane and Holder falls under the attorney-client

privilege. No party disputes that MSPD represented Ruud at the time of the meeting. Even

though Lane and Holder are not attorneys, in certain situations, attorney-client privilege is

extended to communications between the attorney or client and necessary agents of either

party. See State ex rel. Cain v. Barker, 540 S.W.2d 50, 55-56 (Mo. banc 1976). Both

Holder and Lane acted as agents because the purpose of the meeting was to gather and

collect information from Ruud for her attorney. Ruud, who scheduled the meeting,

disclosed information voluntarily, and MSPD staff informed her that the meeting was

confidential.

 The digital recording device also did not serve as an unnecessary third party to the

communication, nor did it affect the confidential nature of the meeting between Rudd and

MSPD staff. It is true, as the State points out, that some federal courts have held the

recording of attorney-client conversations can defeat the privilege because the recording is

considered the functional equivalent of a third party. See United States v. Mejia, 655 F.3d

126, 133-34 (2d Cir. 2011); United States v. Hatcher, 323 F.3d 666, 674 (8th Cir. 2003);

United States v. Madoch, 149 F.3d 596, 602 (7th Cir. 1998). In these cases, however, an

actual third party, usually a prison or jail facility, recorded the attorney-client

conversations. In addition, the attorney and client were aware a third party was recording

their communications, so they could not reasonably expect their conversations were private

or confidential. Here, Ruud herself, not a third party, recorded the conversation, so she

had no reason to believe the conversation during the meeting was anything but private and

confidential. State ex rel. Friedman v. Provaznik, 668 S.W.2d 76, 78 (Mo. banc 1984)

 5
“([T]he expectation of confidentiality must in turn be viewed in the context of the factual

realities of th[e] case.”). For these reasons, the digital recording was not the functional

equivalent of a third party and did not defeat attorney-client privilege. Therefore, absent

waiver of the privilege, the attorney-client privilege protected the conversation between

Ruud and MSPD staff and would prevent the State from using the recording at trial.

 Waiver

 An individual can waive the attorney-client privilege by disclosing a privileged

communication to a third party. State ex rel. Tracy v. Dandurand, 30 S.W.3d 831, 835

(Mo. banc 2000); Great Am. Ins. Co., 574 S.W.2d at 384. A waiver of the attorney-client

privilege, however, must be voluntary. State ex. rel. Behrendt v. Neill, 337 S.W.3d 727,

729 (Mo. App. 2011).

 Ruud waived the attorney-client privilege. She disclosed her privileged

conversation with MSPD staff to a third party when she gave the unsealed box containing

the digital recording to Peat. Ruud’s disclosure was also voluntary. No evidence in the

record suggests, nor does Ruud assert, that she was forced or coerced into handing over the

box with the recording to Peat. Rather, the record indicates Ruud voluntarily gave the box

containing the recording to Peat to prepare for a trip.

 Ruud argues, however, the mere act of handing over the box containing the

recording along with other personal effects is insufficient to establish voluntary disclosure.

Specifically, Ruud contends this act fails to establish she purposely disclosed the recording

to Peat. However, the attorney-client privilege can be waived without subjective intent to

waive the privilege through conduct that “would make it unfair for the client to invoke the

 6
privilege thereafter.” See 1 McCormick on Evidence § 93 (8th ed.) (“Finding waiver in

situations in which forfeiture of the privilege was not subjectively intended by the holder

is consistent with the view … that the essential function of the privilege is to protect a

confidence that, once revealed by any means, leaves the privilege with no legitimate

function to perform.”). Moreover, nothing in the record suggests Ruud intended the box

and its contents to remain confidential. Ruud did not direct Peat to keep the box and its

contents secret or private. The box was unsealed, and no evidence suggests Ruud was

unaware the box contained the recording or the disclosure of the recording to Peat was

otherwise inadvertent. 2 Instead, the record reflects Ruud consciously gave the box and all

of its personal contents to Peat to store before beginning a trip. Ruud’s conduct-the act of

handing over the recording in this manner- constituted a voluntary disclosure. See State ex

rel. Tracy, 30 S.W.3d at 832 (finding attorney-client privilege was waived when the party

claiming the privilege handed over documents to a third-party expert).

 Ruud also argues the common-interest doctrine prevents any waiver of her

attorney-client privilege. The common-interest doctrine expands attorney-client privilege,

allowing the privilege to remain intact “where the third party shares a common interest in

the outcome of the litigation and where the communication in question was made in

confidence.” Lipton Realty, Inc. v. St. Louis Hous. Auth., 705 S.W.2d 565, 570 (Mo. App.

2
 Inadvertent disclosure does not necessarily waive the attorney-client privilege. See Diehl
v. Weber, Inc., 309 S.W.3d 309, 325 (Mo. App. 2010) (finding inadvertent disclosure did
not waive the attorney-client privilege and documents should be returned to the party who
disclosed them); see also Gray v. Bicknell, 86 F.3d 1472, 1488 (8th Cir. 1996) (finding
inadvertent disclosure did not waive the attorney-client privilege).
 7
1986). The doctrine exists to “allow[] parties with a community of interests to preserve

the privilege’s protections where the parties had ‘joined forces for the purpose of obtaining

more effective legal assistance.’” State ex rel. Winkler v. Goldman, 485 S.W.3d 783, 790

(Mo. App. 2016) (quoting Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 578 (N.D.

Cal. 2007)). Here, Ruud gave the unsealed box containing the recording to Peat to store,

not so the two could use the recording to prepare a joint legal strategy. Moreover, nothing

in the record supports a finding that Peat and Ruud shared a community of interests at the

time of disclosure. The State had not yet charged them, and it is entirely unclear from the

record whether their involvement and interests in the criminal matter were aligned.

Therefore, the common interest doctrine does not apply.

 In sum, Ruud voluntarily disclosed a privileged communication to a third party

when she handed Peat the unsealed box containing the digital recording. Ruud gave no

direction or instruction to Peat pertaining to the confidential nature of the items within the

box. Ruud told Peat only to store the box and its contents in preparation for an over-the-

road truck driving trip. By voluntarily giving the digital recording to Peat under these

circumstances, Ruud undermined the confidentiality that the attorney-client privilege is

intended to protect and waived her privilege. 3

3
 Although not raised in the party’s briefing, marital privilege also does not preclude the
use of the digital recording at trial. The marital privilege prohibits testimony concerning
statements privately communicated between spouses during their marriage. Section
546.260, RSMo 2016. When a criminal prosecution involves an alleged victim under the
age of 18, however, marital privilege does not apply. Id. Here, Ruud’s daughter, the
alleged victim, was only 16 years old. Therefore, the marital privilege does not apply. See
State v. Kleine, 330 S.W.3d 805, 811 (Mo. App. 2011) (finding testimony by the
defendant’s former wife concerning a confession he made to her during the marriage was
 8
 Conclusion

 The circuit court abused its discretion in finding the recording was privileged;

therefore, the preliminary writ of mandamus is made permanent.

 ___________________
 W. Brent Powell, Judge

All concur.

admissible under the marital privilege statute because one of the victims was under the age
of 18).
 9