262 S.W.2d 25 (1953)
STATE
v.
ST. CLAIR.
No. 43382.
Supreme Court of Missouri. Division No. 1.
November 9, 1953.
*26 Russell Maloney, J. K. Owens, Kansas City, for appellant.
John M. Dalton, Atty. Gen., Will F. Berry, Jr., Asst. Atty. Gen., for respondent.
HOLLINGSWORTH, Judge.
Convicted in the Circuit Court of Jackson County of robbery in the first degree, defendant has appealed from a sentence of imprisonment in the State Penitentiary for a term of five years imposed upon him in conformity with the verdict returned by the jury. At the trial he admitted physical perpetration of the act of robbery as charged in the information but pleaded not guilty by reason of insanity and duress. The trial court submitted and instructed the jury on the issue of insanity but refused his request for an instruction submitting the issue of duress. He assigns error in the refusal of the court to so instruct, in the admission and exclusion of evidence, and in the denial of his motion for a mistrial based upon alleged improper argument of the prosecuting attorney.
The victim of the robbery was William Ricken, who lived and operated a truck garden in or near Kansas City in Jackson County and sold the produce thereof from a roadside stand in front of his home. On the night of August 19, 1950, at about 11 o'clock and after he had retired, someone knocked at his rear bedroom door. He did not answer. The door was pushed open, a man entered and stated, "We want your money." The man held a pistol in one hand and a flashlight in the other. The flashlight enabled Rieken to see the intruder. Rieken went into another room, took $325 from his overalls and brought it to the intruder, who took it and said to him, "Now you stay in there. We are going to be around here awhile, if you come out we will shoot you." When the intruder left the house, Rieken looked through a window, and saw a truck driven away with men in it. He promptly reported the matter to the police and, at the trial, identified defendant as the man who entered his home and robbed him.
On August 26, 1950, defendant and Loren Young and Calvin McNeal were arrested at defendant's home near Blue Springs in Jackson County, where were found a stolen automobile, several flashlights, numerous firearms and a large quantity of ammunition. Defendant, upon being questioned by the officers, readily admitted participation in the robbery as above detailed by Rieken, but also asserted that Young and McNeal had forced him to do so. Young and McNeal are now serving terms of imprisonment in the penitentiary.
The evidence in behalf of defendant tended to show that he was about twenty-seven years of age at the time of the trial; that during early childhood he became critically *27 ill from food poisoning, which left his mentality impaired; that henceforth he was dull and was unable to remain in school beyond the third grade; that in March of 1943 he was committed to the State Hospital at Nevada as an insane person, later released or paroled, again committed and again discharged in about 1944. A duly qualified neurologist testified that he made several examinations of defendant a few months before the trial and found him suffering from an organic disease of the brain; that defendant would be easily swayed by threats, was possessed of an insane fear of two men and could not be persuaded otherwise; and that he was not capable of knowing right from wrong insofar as his connection with these men was concerned. The witness did not state the names of the men of whom defendant stood in such fear.
Defendant lived with his wife and son and collected and sold used automobile parts. He testified that in July, before the robbery in August, Young and McNeal first came to his home to buy an automobile part; that thereafter they made frequent visits to his home and soon began to stay there practically all of the time, in the house and yard, slept on his premises in their automobile and had his wife cook for them; that Young and McNeal there engaged in extensive target practice with firearms; that he tried to stop them but they wouldn't stop; that they shot at him and threatened him, and that he came to fear them greatly and was afraid to report them to the sheriff's office; they told him that if he did report them, they would kill both him and his wife before the officers could get them.
Defendant further testified that on the night of the robbery Young and McNeal asked him to drive his truck to Kansas City to "haul some stuff" for them; that he did not want to go, but they threatened to "punch" him; that at their direction he drove his truck, with them accompanying him, to some place in Kansas City; that he did not know where they were, but one finally said, "Here is where the job is going to be", and he started to stop, but Young told him to drive on; that they went to a little town somewhere, where Young told him it was going to be a holdup of old man Rieken; that he started to argue, but they said that if he didn't do what they said to do, they were going to "blow my head out"; that they said to him, "If you get out [of Rieken's house] and run away, we are going back out and shoot your wife and boy", and he was afraid he would be shot if he did not go through with the holdup; that McNeal gave him a pistol and McNeal displayed a sawed-off shotgun. Young stayed in the truck. McNeal went with defendant to the door of Rieken's home, hammered on the door with the end of the sawed-off shotgun, and told defendant to go in and ask for the money; that he went in and held up Rieken in the manner testified by Rieken; that he then ran back to the truck preceded by McNeal, and all sped away; that McNeal took the money and the pistol from him; that Young then laughed, saying, "You robbed a man with a gun that wasn't even loaded", and showed him that the pistol which he had used in holding up Rieken had no ammunition in it.
The appellate courts of this State seem not to have dealt with duress or coercion as a defense to an otherwise criminal act. At least, we have not been cited nor have we found any such case. However, the question has been considered with some frequency in other jurisdictions. Numerous cases are cited in Wharton's Criminal Law, Vol. 1, § 384, p. 514. From these cases and others cited below it is established by the great weight of authority that although coercion does not excuse taking the life of an innocent person, yet it does excuse in all lesser crimes. Nall v. Commonwealth, 208 Ky. 700, 271 S.W. 1059; 15 Am.Jur., Criminal Law, § 318, p. 16. But, to constitute a defense to a criminal charge, the coercion must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious *28 bodily injury invoke the doctrine as an excuse. R. I. Recreation Center v. Aetna Casualty & Surety Co., 1 Cir., 177 F.2d 603, 12 A.L.R.2d 230, 233; People v. Merhige, 212 Mich. 601, 180 N.W. 418; State v. Clay, 220 Iowa 1191, 264 N.W. 77; 22 C.J.S., Criminal Law, § 44, page 99, and cases cited in footnotes.
We are convinced that the evidence in this case made a submissible issue under defendant's plea of duress. If the evidence above set forth was believed by the jury, it would have justified a finding that defendant committed the robbery not of his volition, but because of a well grounded fear of present, imminent and impending death or serious bodily injury at the hands of Young and McNeal. Furthermore, if believed by the jury, his testimony that he was under the immediate surveillance of McNeal who stood at the door with a drawn shotgun at the time he was in the Rieken home would warrant a finding that he had no reasonable opportunity to avoid committing the robbery without immediate exposure to death or great bodily injury. Under these circumstances, the court erred in refusing to instruct the jury on the issue of duress. Section 546.070 RSMo 1949, V.A.M.S.; State v. Smith, Mo.Sup., 240 S.W.2d 671, 674; State v. Kinard, Mo.Sup., 245 S.W.2d 890, 893.
During the course of the trial, defendant's mother was permitted to testify that defendant was admitted to the State Hospital at Nevada as an insane person on two occasions in 1943, but the court refused to admit in evidence a duly certified copy of an order of the County Court of Jackson County rendered on February 8, 1943, adjudging defendant to be insane, indigent and a proper person to be sent to State Hospital No. 3 as a county patient and ordering his admittance therein. The refusal to admit the certified copy of this judgment was based upon an objection of counsel for the State that it was not properly identified. The proffered exhibit has been filed with the transcript and it shows due and proper certification by the Clerk of the County Court of Jackson County under date of June 26, 1951, with the seal of the court affixed.
While it is true that there was oral testimony of defendant's admission to the state hospital in 1943, yet the solemn judgment of a court having jurisdiction of the person of defendant and the subject matter of the inquisition would be persuasive of his mental condition at the time the judgment was rendered. Especially is this true in this case due to the fact that the State was suggesting throughout the trial that defendant was admitted to the hospital in an effort to evade compulsory military service. Such an adjudication is admissible, not as constituting any presumption of continued insanity after discharge from the institution, but rather as a circumstance bearing upon defendant's mental condition at the time of the robbery. State v. Stucker, 352 Mo. 1056, 180 S.W.2d 719, 721, 722; Annotation 7 A.L.R. 568, 582; 20 Am.Jur., Evidence, § 349, pp. 323, 324.
At the time the judgment was rendered, county courts were courts of record under the provisions of Art. 6, § 36, of the Constitution of 1875, V.A.M.S., and by the express provisions of Section 490.130 RSMo 1949, V.A.M.S., copies of their proceedings, attested by the clerk, with the seal of the court attached, are admissible in evidence. And, although such courts are no longer courts of record, yet, by the provisions of Art. 6, § 7, of the Constitution of 1945, V.A.M.S., they are required to keep an accurate record of their proceedings. Consequently, their records, certified as above stated, are admissible without further identification. State v. Worden, 331 Mo. 566, 56 S.W.2d 595, 598. The court erred in refusing to admit the exhibit.
Other errors assigned relating to the admission of evidence and the alleged improper argument arose in a manner that probably will not occur in a later trial, and need not, therefore, be reviewed.
The judgment is reversed and the cause remanded.
All concur.