STATE of Missouri, Respondent,

v.

Michelle Rene RUMBLE, Appellant.

No. 66155.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1984.

Rehearing Denied Dec. 18, 1984.

David Hemenway, Kathryn Shubik, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John J. Oldenburg, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Michelle Rene Rumble was convicted of first degree felony murder [§ 565.003, RSMo 1978][1] and sentenced to life imprisonment. On appeal to the Missouri Court of Appeals, Eastern District, defendant contended that the trial court erred in refusing to instruct the jury on the defense of duress. The court of appeals agreed with defendant that duress should be a defense to felony murder because it would be available as a defense to the underlying felony of robbery.[2] The court held that failure to instruct on duress constituted error; however, the court also observed that § 562.071.2, RSMo 1978[3] ex-

---

1. Section 565.003, RSMo 1978 reads as follows: Any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary or kidnapping.

   In 1983 the General Assembly repealed this statute and enacted a new first degree murder provision, § 565.020, RSMo Cum.Supp.1983; however, the present case is governed by § 565.003.

2. We note that in 1983 the Arizona Supreme Court was confronted with this question in *State v. Berndt*, 138 Ariz. 41, 672 P.2d 1311 (1983). *Berndt* involved a statute which provided that duress "is unavailable for offenses involving homicide or serious physical injury." *State v. Berndt*, 672 P.2d at 1314. The court held that "[f]irst degree murder, whether premeditated or felony murder, is, of course, a homicide [and] whether the jury convicted appellant of premeditated or felony murder, the plain language of

A.R.S. § 13–412(c) bars duress as a defense." *Id. See also People v. Petro*, 13 Cal.2d 245, 56 P.2d 984, 985 (1936); *State v. Moretti*, 66 Wash. 537, 120 P. 102, 103 (1912).

3. Section 562.071.1, RSMo 1978 provides:

   It is an affirmative defense that the defendant engaged in the conduct charged to constitute an offense because he was coerced to do so, by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist.

   However, the second subsection provides:
   2. The defense of "duress" as defined in subsection 1 *is not available:*
      (1) *As to the crime of murder;*
      (2) As to any offense when the defendant recklessly places himself in a situation in which it is probable that he will be subjected to the force or threatened force described in subsection 1.

pressly provides that duress is not available as a defense to the crime of murder. Consequently, the court of appeals transferred the case to this Court—recognizing that the question of whether § 562.071.2 bars duress as a defense in a first degree felony murder prosecution under § 565.003 raises an issue of general interest or importance. We affirm.

The salient facts in this case can be briefly stated. In July of 1981, defendant, a convicted felon, turned to prostitution at the suggestion of her boyfriend, Kennard Keys. Defendant met the murder victim for the first time in July of 1981 while working the "Stroll"—an area in St. Louis habitually frequented by prostitutes and their customers. At the time defendant first met the victim, she and Keys had been living in her mother's house in St. Louis. After her first sexual encounter with the victim, she agreed to provide him with her services approximately twice a week on a somewhat regular basis. In return for her services, the victim paid defendant between $75 and $100 for each visit.

During this period of time, defendant and Keys grew dissatisfied with their lack of money and having to live in her mother's home. On September 3, 1981, the victim and defendant had arranged another of their customary meetings for that evening. However, defendant and Keys had decided to rob the victim rather than provide him with his usual fare.

Their plan called for the defendant to ask the victim to take her to Eads Park before going elsewhere to transact their usual business. After defendant led the victim to the park, Keys was to rob him. This plan was put into effect and the victim robbed, but he was also stabbed to death by Keys with a kitchen knife taken from the home of the defendant's mother. Approximately $300 to $350 in cash was stolen from the body of the victim.

After killing and robbing the victim, they fled the scene in his car. The twosome returned to defendant's mother's house where defendant attempted to bandage Keys' hands which had been injured when he repeatedly thrust the knife into the victim's body. From there they drove to East St. Louis to drink beer and smoke marijuana with friends. After returning from East St. Louis, defendant accompanied Keys to a hospital where his hands were properly bandaged.

Their activities that evening concluded with a six hour stay at a St. Louis motel. However, before entering the motel, they abandoned the victim's car—but not before they attempted to wipe it clean of any fingerprints.

The fundamental question in this case is whether § 562.071.2 bars duress as a defense in a prosecution for first degree felony murder under § 565.003. Defendant would have us answer this question in the negative. We disagree.

■ We initially observe that "at common law, a homicide was either murder or manslaughter ...." *State v. Clark*, 652 S.W.2d 123, 125 (Mo. banc 1983). *See also* W. LaFave & A. Scott, Criminal Law, 528–30 (1972). In the early stages of the development of the common law there was but one type of murder, which consisted of the unlawful killing of another with a premeditated intent to kill. Model Penal Code and Commentaries § 210.2, Comment 1 (Rev., 1980) However, as society progressed and the common law developed, courts began to recognize a number of new forms of the crime of murder—including felony murder, depraved-heart murder, and intent to do grievous bodily injury murder. *Id.* These new forms of murder merely signified a variety of mental states "deemed sufficient to support liability for *murder.*" (emphasis added). *Id.* What remained unchanged, though, was that at common law each of these new offenses represented a single crime—murder.[4]

**4.** At a later stage in the development of the criminal law, legislatures began dividing common law murder into degrees. 40 C.J.S. *Homicide*, § 29 (1944). However, this development resulted from the recognition that different species of the crime of murder may warrant different degrees of punishment. *Id.* But the assign-

■ In our recent decision in *Clark*, we· had occasion to trace the evolution of the felony murder rule in discussing the rule as applied to second degree murder. In *Clark* we held that *"the rule does not make the underlying felony an element of the felony murder; it merely provides an additional means of providing the requisite felonious intent for murder.* (emphasis in original). *State v. Clark, supra,* 652 S.W.2d at 126. Moreover, we expressly noted that the only way in which § 565.003 modifies the common law is that it includes the phrase "without a premeditated intent." *Id.* at 126–27. Consequently, the practical effect of the felony murder rule, as codified in § 565.003, is that the rule "permits the felonious intent necessary to a murder conviction to be shown by the perpetration of or attempt to perpetrate a felony." *Id.* at 126. As Judge Higgins succinctly stated in *State v. Jewell,* 473 S.W.2d 734, 739 (Mo.1971), "whether a killing amounting to murder, first degree, is committed in such manner that proof of its elements is constructively presumed, as in felony-murder, rather than directly, it is nonetheless murder, first degree ...."

Next, we consider the application and availability of the affirmative defense of duress. In *State v. St. Clair*, 262 S.W.2d 25, 27 (Mo.1953), we clearly delineated the elements and perimeters of this common law defense.

> [T]o constitute a defense to a criminal charge, the coercion must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury invoke the doctrine as an excuse.

Moreover, in defining its limitations, we stated that "it is established by the great weight of authority that although coercion does not excuse taking the life of an innocent person, yet it does excuse in all lesser crimes." *State v. St. Clair, supra,* 262 S.W.2d at 27.

In *St. Clair* we simply reaffirmed the common law rule that duress is not available as a defense to the crime of murder: section 562.071 mirrors precisely the perimeters of the rule—as defined in *St. Clair.*

■ Adopting defendant's argument would require us to presume that when the General Assembly codified the rule of duress in § 562.071, it was unaware of our decision in *St. Clair* and without knowledge of the well-established legal principles just discussed. This we cannot do because in construing a statute to determine legislative intent, a court must presume that the legislature acted with a full awareness and complete knowledge of the present state of the law. *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 41 (Mo.1969).

■ Section 562.071.2 in unmistakably clear language declares that duress is not a defense to the crime of murder—any murder. The defendant's argument would engraft upon this statute words never penned and an application never intended. Because § 562.071.2 is free of any ambiguity whatsoever, our only duty is to give effect to the expressed intent of the legislature. We conclude that § 562.071.2 expressly prohibits the availability of duress as a defense to first degree felony murder.

Defendant's second point for reversal is that the trial court erred in giving Instruction 10.[5] This Court has previously held

---

ing of degrees did not change the underlying nature of the crime of murder.

**5.** Instruction No. 10

If you do not find the defendant guilty of capital murder, then you must consider if she is guilty of murder in the first degree.
A person is responsible for her own conduct and she is also responsible for the conduct of another person in committing an offense if she acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, she aids or encourages the other person in committing it. If you find and believe from the evidence beyond a reasonable doubt:
First, that on or about September 3, 1981, in the City of St. Louis, State of Missouri, the

that "the giving or failure to give a proper instruction is error, the prejudicial effect of which, if any, to be judicially determined." *State v. Holland,* 653 S.W.2d 670, 675 (Mo. banc 1983).

The trial court did not include in Instruction 10, which was a modified version of MAI–CR2d 2.12 [6], nor in any other instruction, the requirement that the jury must find that defendant knew that Keys was practically certain to murder the victim. Defendant contends it was error not to instruct on this point.

█ To be convicted of first degree felony murder under § 565.003, a person need only have the requisite intent to commit or participate in the underlying felony and "no other mental state on his part need be demonstrated because of the strict liability imposed by the felony rule." *State v. O'Neal,* 618 S.W.2d 31, 38 (Mo.1981). The trial court's refusal to require the jury to find defendant knew that Keys was practically certain to murder the victim was not error.

█ Defendant also contends that the giving of an instruction modeled on MAI—CR2d 2.12 in a felony murder prosecution constitutes prejudicial error because Note on Use 2 cautions against the use of MAI–CR2d 2.12 for felony murder. However Note on Use 2 also directs the reader to Note on Use 8 which indicates that courts should develop instructions submitting the responsibility of one person for the conduct of another—in felony murder prosecutions—on a case-by-case basis. That portion of the transcript covering the jury instruction conference clearly reveals that the trial judge recognized that there was a complete absence of any MAI–CR2d instructions covering felony murder. He therefore modified MAI–CR2d 2.12 to submit defendant's responsibility for the conduct of Keys; and in so doing, he gave an instruction that contained a correct statement of the law of first degree felony murder. The judgment is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring.

I concur for the reasons stated in the principal opinion and for the further reason that the defendant, who had ample opportunity to warn the victim of his impending fate, did not make a submissible case of duress.

defendant or Kennard Keys caused the death of Lelvin Mattingly by stabbing him, and Second, that the defendant or Kennard Keys did so in robbing or attempting to rob Lelvin Mattingly, then you are instructed that the offense of murder in the first degree occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
Third, that with the purpose of promoting or furthering the commission of robbery, the defendant acted together with or aided or encouraged Kennard Keys in committing that offense, then you will find the defendant guilty of murder in the first degree.
However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.
A person forcibly steals, and thereby commits robbery, when, in the course of stealing, he uses or threatens the immediate use of physical force upon another person for the purpose of:
(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.
A person steals, as that term is used above, if he appropriates property of another with the purpose of depriving him thereof, either without his consent or by means of coercion.

6. On April 30, 1982 this Court adopted a new MAI–CR2d 2.12, (effective January 1, 1983) which is the version the trial court selected to use as a pattern for Instruction 10. All references to MAI–CR2d 2.12 will be to the 1983 version.