**STATE of Missouri, Respondent,**

v.

**Donald Gene HORNE, Appellant.**

**No. WD 41245.**

Missouri Court of Appeals, Western District.

Aug. 29, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1989.

Application to Transfer Denied Nov. 14, 1989.

James F. Crews, Crews & Gaw, Tipton, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Donald Gene Horne was found guilty by a jury of acceding to corruption, § 576.020, RSMo 1986. The jury recommended a sentence of five years imprisonment and a fine to be set by the judge, but the court imposed sentence of imprisonment for three years with no fine. Horne contends the State failed to prove an agreement, error in the giving of an instruction, and error in failure to instruct on the defense of duress. Affirmed.

Horne was employed as a medical assistant at the Missouri State Penitentiary. As a medical assistant he had access to certain drugs in the penitentiary pharmacy. An inmate, Joe Copeland, worked with Horne in the medical office. Copeland testified that Horne sold drugs to Copeland and that Copeland told Arthur Dearixon, an investigator in the penitentiary. Dearixon delivered $130 to Copeland to give to Horne. Dearixon photocopied the bills which he gave Copeland. Later, Copeland told Dearixon when he had given the money to Horne. After learning that Copeland had delivered the money to Horne, Dearixon stopped Horne, as Horne was leaving the penitentiary, and searched him. Dearixon found $90 of the bills which he had given to Copeland in the possession of Horne.

Copeland testified that Horne had given him ten or eleven dilaudid pills for which he paid Horne $150. Horne later gave Copeland 100 dilaudid pills and Copeland paid him $690.

After Dearixon found the money on Horne, an inventory was conducted of the pharmacy and it was found that three bottles, containing 100 dilaudid tablets each, were missing.

Copeland testified that he used some of the drugs obtained from Horne, and the remainder he sold and gave away to other inmates.

Horne testified and admitted supplying the dilaudid pills to inmates. Horne testified he did so only because several inmates had threatened him by showing him pictures of his house and telling him that one day he would find himself with a knife in his back or that members of his family would be harmed.

Section 576.020, RSMo 1986, provides, so far as relevant to this case, that a public servant commits the crime of acceding to corruption if he knowingly solicits, accepts, or agrees to accept any benefit for his violation of a known legal duty as a public servant. The information charged that Horne knowingly accepted money in return for agreeing to deliver a benefit to an inmate of the Missouri State Penitentiary which was a violation of his known legal duty as a public servant.

■ Horne first contends that he was charged with entering into an agreement to deliver a benefit and the State failed to prove the agreement. The statute provides that the crime is committed by knowingly accepting any benefit. The information charged that Horne knowingly accepted money, a benefit, in return for agreeing to deliver a benefit to an inmate. Horne focuses on the word "agreeing" in the information, and contends that the State was required to prove that Horne entered into an agreement to deliver a benefit to an inmate, that the State failed to prove such agreement, and he was therefore entitled to a directed verdict of acquittal.

■ The part of the information upon which Horne focuses is surplusage because the crime was alleged when the informa-tion charged that Horne had knowingly accepted money in return for his violation of his legal duty as a public servant. The information stated the elements of the crime without reference to the language "agreeing to deliver a benefit to an inmate of the Missouri State Penitentiary." The agreeing to deliver a benefit part of the information was surplusage. It was not necessary that the State either allege or prove the surplus language. *State v. Martin*, 346 S.W.2d 71, 72[2] (Mo.1961). Since the State was not required to prove an agreement for Horne to deliver a benefit to an inmate, there is no merit in his contention that he was entitled to a directed verdict of acquittal.[1]

Horne next contends that the court erred in giving the verdict directing instruction for acceding to corruption, because that instruction omitted a finding that Horne agreed to deliver a benefit. The holding that the agreeing to deliver a benefit language is surplus applies to this argument. Since it was surplusage, the State was not required to prove it and, certainly, was not required to submit that issue to the jury. The instruction follows MAI–CR3rd 330.12 and was in proper form.

Horne finally contends that he was entitled to an instruction submitting the common law defense of acting under duress. In *State v. Rumble*, 680 S.W.2d 939, 942[2,-3] (Mo. banc 1984), the court quoted *State v. St. Clair*, 262 S.W.2d 25, 27 (Mo.1953), as clearly delineating the elements of the common law defense of duress as follows:

> [T]o constitute a defense to a criminal charge, the coercion must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury invoke the doctrine as an excuse.

---

1. Although the State was not required to prove an agreement, there was evidence that Horne did agree with Copeland to deliver drugs to him in exchange for Copeland's agreement to pay Horne.

In *State v. Porter*, 755 S.W.2d 3, 4[1] (Mo.App.1988), this court held that the threat of future injury does not establish a defense of duress under the holding in *Rumble*. This court held that evidence that the threat was of future injury authorized the trial court to refuse an instruction on duress. As in *Porter*, the threats in this case, according to Horne's testimony, were not of the present, imminent, and impending nature as required in *Rumble*, but were threats of future injury. As stated in *Porter*, threats of future injury are insufficient to establish the defense of duress and the court properly refused the duress instruction.

The judgment is affirmed.

All concur.